# STATE OF MICHIGAN

# COURT OF APPEALS

PAULA ALI,

       Plaintiff-Appellee,

UNPUBLISHED
September 14, 2017

v

ZYIEDA ALI and ABDEL ALI,

       Defendants-Appellants.

No. 331601
Wayne Circuit Court
LC No. 14-109427-DM

Before: GADOLA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendants appeal as of right a judgment of divorce entered in this action filed by plaintiff, Paula Ali, against defendant, Zyieda Ali. Defendant Abdel Ali was later joined as a necessary party to the action to determine his alleged interest in property located at 2217 Boldt in Dearborn (the Boldt property), which plaintiff claimed was a marital asset.[1] For the reasons discussed below, we affirm in part, but vacate the entry of the divorce judgment, reverse the order awarding attorney fees, and remand to the trial court for further proceedings.

## I. THE BOLDT PROPERTY

### A. DUE PROCESS

First, defendants contend that the trial court denied Abdel due process of law by failing to comply with several court rules before adjudicating Abdel's alleged interest in the Boldt property. We disagree.

Defendants did not allege any due process violation at the evidentiary hearing held to determine Abdel's alleged interest in the Boldt property. They first claimed that Abdel was denied due process in their motion for rehearing or reconsideration. "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Nonetheless, we may

---

[1] Because defendants share the same last name, we will refer to defendant Zyieda Ali as "defendant" and defendant Abdel Ali as "Abdel" in this opinion.

-1-

review this unpreserved issue because it is "an issue of law for which all the relevant facts are available." *Id*. Unpreserved constitutional issues are reviewed for plain error affecting a party's substantial rights. *Demski v Petlick*, 309 Mich App 404, 463; 873 NW2d 596 (2015).

In *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014), our Supreme Court observed that, "at a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard." Defendants allege the following violations of the Michigan Court Rules denied Abdel due process of law: (1) the failure to issue a summons in order to obtain personal jurisdiction over Abdel in violation of MCR 2.102; (2) the fact that there was no complaint indicating the causes of action against Abdel or the relief requested in violation of MCR 2.111(B); (3) the failure to allow Abdel to file a responsive pleading in violation of MCR 2.301; (4) the denial of the opportunity to participate in discovery in violation of MCR 2.301; (5) the denial of time to prepare for trial in violation of MCR 2.501(C); and (6) the failure to allow Abdel to request a jury trial in violation of MCR 2.508(B)(1).

However, the trial court complied with the court rule regarding the necessary joinder of parties. MCR 2.205 provides, in relevant part:

> **(A) Necessary Joinder.** Subject to the provisions of subrule (B) and MCR 3.501, persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties and aligned as plaintiffs or defendants in accordance with their respective interests.

> **(B) Effect of Failure to Join.** When persons described in subrule (A) have not been made parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action, and may prescribe the time and order of pleading. If jurisdiction over those persons can be acquired only by their consent or voluntary appearance, the court may proceed with the action and grant appropriate relief to persons who are parties to prevent a failure of justice. In determining whether to proceed, the court shall consider

> (1) whether a valid judgment may be rendered in favor of the plaintiff in the absence of the person not joined;

> (2) whether the plaintiff would have another effective remedy if the action is dismissed because of the nonjoinder;

> (3) the prejudice to the defendant or to the person not joined that may result from the nonjoinder; and

> (4) whether the prejudice, if any, may be avoided or lessened by a protective order or a provision included in the final judgment.

> Notwithstanding the failure to join a person who should have been joined, the court may render a judgment against the plaintiff whenever it is determined that the plaintiff is not entitled to relief as a matter of substantive law.

-2-

Abdel claimed an interest in the Boldt property, a subject matter of this action. His presence was essential for the court to render complete relief because plaintiff and defendant disputed whether defendant or Abdel owned that property and, to divide the marital estate, the trial court had to determine whether the property was owned by defendant or Abdel. Thus, the trial court properly made Abdel a defendant in the action. See MCR 2.205(A). Because Abdel was not a party, the trial court was permitted to order Abdel summoned to appear in the action. See MCR 2.205(B). The trial court ordered that Abdel be served with a summons and the order. Although a proof of service is not contained in the lower court file, Abdel's attorney filed an appearance on his behalf and Abdel and his attorney appeared at the evidentiary hearing. The trial court acquired personal jurisdiction over Abdel by this voluntary appearance. See MCR 2.205(B).

MCR 2.205(B) further allows the trial court to "prescribe the time and order of pleading." According to its order, the trial court did not require Abdel to file a responsive pleading, but he was not prohibited from doing so. The trial court ordered him to produce documentation related to the Boldt property, appear at the evidentiary hearing, and testify at the hearing. Although there was no complaint filed against Abdel, the court rules do not require a complaint against an added party. Moreover, the trial court's order clearly indicated that Abdel's ownership interest in the Boldt property was the subject of the evidentiary hearing.

Defendants argue that Abdel was not allowed time to file a responsive pleading, conduct discovery, or prepare for trial. But the trial court's order was issued on August 25, 2015, and the evidentiary hearing was scheduled for September 9, 2015, but then rescheduled to September 23, 2015, giving Abdel additional time. When Abdel and his attorney appeared on September 23, 2015, they never claimed that they needed time for discovery or to prepare for the hearing. Defendants fail to explain what they could have established with additional time for discovery or preparation. Therefore, they have not established any error affecting their substantial rights.

Finally, as defendants acknowledge, MCR 2.508(B)(1) provides that "[a] party may demand a trial by jury of an issue as to which there is a right to trial by jury by filing a written demand for a jury trial within 28 days after the filing of the answer or a timely reply." Abdel was represented by an attorney and he never filed a demand for a jury trial, or even raised the issue orally at the evidentiary hearing. The failure to do so constituted a waiver of a trial by jury. MCR 2.508(D)(1).

## B. DETERMINATION OF ABDEL'S ALLEGED PROPERTY INTEREST

Defendants argue that the trial court erred by finding that Abdel had no interest in the Boldt property. We disagree.

"We review for clear error a trial court's findings of fact regarding whether a particular asset qualifies as marital or separate property. Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010) (citations omitted). "We accord special deference to a trial court's factual findings that were based on witness credibility." *Id*. at 358.

In *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997), this Court explained:

> The distribution of property in a divorce is controlled by statute. In granting a divorce, the court may divide all property that came to either party *by reason of the marriage* . . . . When apportioning marital property, the court must strive for an equitable division of increases in marital assets that may have occurred between the *beginning* and the end of the marriage. Thus, the trial court's first consideration when dividing property in divorce proceedings is the determination of marital and separate assets. This distinction between marital and separate estates has long been recognized in this state. Generally, the marital estate is divided between the parties, and each party takes away from the marriage that party's own separate estate with no invasion by the other party. However, a spouse's separate estate can be opened for redistribution when one of two statutorily created exceptions is met. [Citations and quotation marks omitted.]

The trial court found that defendant was the true owner of the Boldt property. Although both defendants testified that Abdel owned the property, the trial court found that their testimony was not credible. The court stated that Abdel's testimony was "inconsistent, contradictory, and not credible, in ways both small and large." In particular, the court noted that (1) Abdel gave inconsistent testimony regarding when he first started living at the Boldt property; (2) Abdel testified that he did not charge defendant rent, but he executed an eviction notice indicating that defendant owed $2,000 in rent; (3) Abdel testified that he allowed defendant to live at the Boldt property because he could not leave defendant on the street, but he then purported to evict defendant without knowing where he would live; (4) Abdel claimed he was angry with defendant for involving him in the divorce, but he also testified that he involved defendant by asking him to cosign for the land contract and to execute a quitclaim deed conveying the property to him; (5) defendants failed to produce any evidence corroborating their testimony that Abdel's mother was involved in the financing of the Boldt property, and they failed to present Abdel's mother as a witness; (6) Abdel claimed that he made land contract payments in an amount different from the monthly payment required by the land contract; (7) Abdel claimed that he consistently made land contract payments, but stated that he knew nothing about outstanding taxes on the Boldt property; and (8) Abdel claimed he made payments on the home when he was unable to live there for more than three years. The trial court further found that the evidence demonstrated a pattern of defendant placing Abdel's name on property and assets that defendant actually owned.

On appeal, defendants dispute the trial court's credibility determinations, but the trial court is in a superior position to assess credibility, so we give special deference to those findings. See *Woodington*, 288 Mich App at 358. Moreover, there is no indication that the trial court "falsely claim[ed] a lack of credibility in order to get special deference" from this Court. Contrary to defendants' assertion, the trial court's determination that Abdel was credible in some respects, but not in others, does not signal any impropriety.

Moreover, defendants' arguments are not persuasive. First, defendants argue that several documents were admitted into evidence that established Abdel owned the home. While this may be true, the trial court believed that defendant had placed Abdel's name on property that defendant, in fact, owned. Defendants also contend that the trial court should not have doubted

that Abdel would have wanted to purchase a house at age 21 or that he would have had the money to do so. However, the trial court did not doubt Abdel's desire or ability to purchase the Boldt property; rather, it only doubted that he would have made payments when he could not live in the home.

Defendants further contend that the trial court should not have rejected Abdel's claimed interest in the home because he failed to produce his mother as a witness. The trial court, however, stated that defendants had failed to provide *any* corroborating evidence of the source of the payments. Both defendants testified that Abdel's mother was actively involved in Abdel's purchase of the home. Calling Abdel's mother as a witness was one way they could have corroborated their testimony. Regarding the amount of the land contract payments, defendants contend that Abdel's testimony that the payment was $797 was actually correct when a late fee of $50 is added. Although defendants' motion for rehearing did address this inconsistency in Abdel's testimony, this was only one of the reasons why the trial court found that Abdel's testimony was not credible, and this clarification did not change the trial court's credibility determination.

Defendants also contend that the trial court misunderstood Abdel's testimony, which was that he stopped making payments when he could not obtain a Certificate of Occupancy, not that he made payments for more than three years. However, Abdel's testimony did indicate that he made payments until the Certificate of Occupancy was obtained. He clarified in his affidavit, however, that he only made payments until 2011 or 2012. Although the trial court did find that Abdel made payments for 3½ years, what it found incredible was that Abdel would make any payments when he could not live there for more than three years. Defendants argue that the fact that Abdel stopped making payments is consistent with the fact that he was not paying property taxes, his lack of receipts, and the fact that he had the opportunity to refinance. However, the fact that Abdel did not pay the property taxes and had few receipts was also consistent with defendant being the true owner.

Defendants also attempt to explain the apparent inconsistencies regarding who lived in the Boldt home first. Contrary to defendants' assertions, however, it is not clear that defendant intended to say that he moved into the home in October 2013, rather than 2014. Regardless, contrary to defendants' assertion, this was not a "major issue," but merely one area of testimony that showed defendants' lack of credibility. Defendants also contend that Abdel's income was sufficient to cover the land contract payments as well as the refinancing, especially with help from his mother. However, the trial court never doubted that Abdel had sufficient income; rather, it found a lack of corroboration regarding the source of the payments, including the money from Abdel's mother. While defendants did provide evidence of Abdel's income with their motion for rehearing, they still failed to provide any proof that Abdel's mother helped with the financing, as they claimed at trial.

Defendants also contend that Abdel was honest, stated he did not want to lie, and referred to the property as his house. Again, however, the trial court was in the best position to judge Abdel's credibility, and it did not believe his testimony. Defendants argue that the fact that Abdel appeared at the hearing and is still fighting for the property is an indication of his credibility. However, it could also be a continuation of defendant's effort to conceal this asset from plaintiff. Defendants contend that there is no proof that defendant put money into the home

and doing so would not have made sense. As indicated, however, there was no corroboration of the testimony that the additional money came from Abdel's mother. Thus, it could have come from defendant. Moreover, the fact that defendant had recently married plaintiff and had another home does not establish that he would not buy another property.

Defendants do not dispute other aspects of the trial court's findings, including that defendant testified that he gave the property to Abdel, that defendant was the person who let the appraiser into the Boldt home, that defendant lived in the home rent-free, and defendant's pattern of placing Abdel's name on other property that defendant actually owns. Considering these findings, as well as plaintiff's testimony that defendant told her that he purchased the Boldt property, and the trial court's determination that defendant and Abdel were not credible, the trial court's findings that defendant owned the Boldt property and was attempting to conceal his ownership of this asset are not clearly erroneous.[2] See *Woodington*, 288 Mich App at 357.

## C. MOTION FOR REHEARING, RECONSIDERATION, NEW TRIAL, OR RELIEF FROM JUDGMENT

Defendants argue that the trial court erred by upholding its ruling that Abdel had no interest in the Boldt property in response to defendants' motion for rehearing, reconsideration, new trial, or relief from judgment. We disagree.

"This Court reviews a trial court's decision regarding denial of a motion for rehearing or reconsideration for an abuse of discretion." *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 540; 687 NW2d 143 (2004). Similarly, "[t]his Court reviews for an abuse of discretion a trial court's decision on a motion to set aside a judgment under MCR 2.612. This Court also reviews for an abuse of discretion the trial court's decision to grant or deny motions for a new trial under MCR 2.611." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817 (2014) (citations omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. (citation and quotation marks omitted).

The trial court found that defendants failed to establish (1) that its initial ruling was erroneous or that a different disposition was required under MCR 2.119(F), (2) sufficient reason to grant a new trial under MCR 2.611(A), or (3) sufficient ground for relief from judgment under MCR 2.612(C).

---

[2] In a related argument, defendants contend that the trial court's determination that defendant's 2015 quitclaim deed conveying his interest in the Boldt property to Abdel was void under MCL 566.221 was ineffective to invalidate Abdel's independent 50% interest in the property. However, the issue before the court was not limited to the validity of the 2015 quitclaim deed. Rather, the court was called on to determine whether Abdel had any interest in the property. The trial court found that Abdel had no interest in the property and that defendant was the true owner of the property. As indicated, that finding is not clearly erroneous.

MCR 2.119(F)(3) provides:

Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

MCR 2.611(A)(1) provides:

A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

(a) Irregularity in the proceedings of the court, jury, or prevailing party, or an order of the court or abuse of discretion which denied the moving party a fair trial.

(b) Misconduct of the jury or of the prevailing party.

(c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.

(d) A verdict clearly or grossly inadequate or excessive.

(e) A verdict or decision against the great weight of the evidence or contrary to law.

(f) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial.

(g) Error of law occurring in the proceedings, or mistake of fact by the court.

(h) A ground listed in MCR 2.612 warranting a new trial.

MCR 2.612(C)(1) provides:

On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

Defendants argue that the trial court failed to give any consideration to the affidavits and exhibits submitted with their motion for rehearing, which clarified many of the inconsistencies that the trial court had found. In particular, defendants argue that (1) Abdel's affidavit clarified that he stopped making payments because he was unable to live in the home; (2) Abdel explained that defendant may have stayed at the home before he actually lived there; (3) Abdel provided proof that he sold a car for $4,800, giving him a large portion of the $20,000 needed to refinance, as well as bank statements showing his deposits; and (4) defendants attached proof of four payments, which also showed that the payment amount was $747 plus a late fee of $50. Defendants, however, failed to establish any error or irregularity considering that the trial court's decision was based in large part on the credibility of the witnesses. Moreover, defendants failed to establish that any of this evidence was newly discovered. The majority of the arguments made by defendants are addressed in subpart A, above. With regard to the proof of sale of the vehicle and Abdel's bank statements, there is no evidence that the $4,800 or the deposits were actually used to refinance the home. Moreover, while defendants attached at least one receipt for $797, indicating payment was made by Abdel, this does not establish from where the money came. Defendants have failed to show that the trial court abused its discretion in denying their postjudgment motion.

## D. DIVISION OF THE BOLDT PROPERTY

Next, defendants argue that the trial court erred when it awarded 80% of the value of the Boldt property to plaintiff and only 20% of the value to defendant. We disagree.

In *Butler v Simmons-Butler*, 308 Mich App 195, 207-209; 863 NW2d 677 (2014), this Court stated:

In deciding issues on appeal involving division of marital property, this Court first reviews the trial court's findings of fact. Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous. A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made. If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and will be affirmed unless this Court is left with a firm conviction that the division was inequitable.

* * *

The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. The

-8-

division need not be mathematically equal, but any significant departure from congruence must be clearly explained. To reach an equitable division, the trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance. The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight. The trial court must make specific findings regarding the factors it determines to be relevant. [Citations and quotation marks omitted.]

The trial court determined that the 80/20 distribution was equitable in light of defendant's efforts to conceal or minimize his assets to prevent plaintiff from obtaining her rightful share of the marital assets, and because of plaintiff's lesser earning potential. The trial court also ordered the 80/20 division in lieu of modest spousal support, which it would have otherwise awarded to plaintiff.

Defendants contend that the 80/20 division is inequitable because (1) the Boldt property was the only marital asset with any appreciable value, (2) the trial court gave undue weight to "general principles of equity," (3) plaintiff actually had a higher earning potential than defendant because she is pursuing a certificate to work in healthcare, (4) the trial court failed to consider defendant's more immediate need for retirement savings, and (5) plaintiff's history of assault should have weighed against her. Although the Boldt property was the main asset of value, the trial court ordered the 80/20 provision in lieu of spousal support, which it would have otherwise awarded to plaintiff. There is no indication that the trial court gave undue weight to principles of equity and the fact that defendant had tried to conceal the property. Rather, this was only one of the factors that the trial court considered.

The trial court also did not clearly err by finding that defendant had a higher earning potential given his experience. Although plaintiff testified that she intended to obtain her General Educational Development (GED) Certificate and a degree in healthcare, she had not yet done so. Defendant, however, had worked throughout the duration of the marriage. Contrary to defendants' suggestion, the trial court did acknowledge the ages of the parties. Although defendant was closer to the age of retirement than plaintiff, plaintiff had immediate needs of providing food and housing for the children. In addition, although plaintiff had pleaded guilty to charges stemming from one incident, she testified that she did not actually commit the offense, and both parties had alleged domestic violence. The trial court's finding that there was no significant proof that one party was more at fault for the breakdown of the marriage than the other is not clearly erroneous. As noted, the trial court also awarded this unequal division in lieu of awarding spousal support to plaintiff, and defendants do not contend that an award of short-term spousal support would have been improper. We are not persuaded that the trial court's dispositional ruling was inequitable.

## II. IMPUTATION OF INCOME

Defendants contend that the trial court abused its discretion by imputing income of $27,397 to defendant. We disagree.

"[W]e review a trial court's discretionary rulings, such as the decision to impute income to a party, for an abuse of discretion. An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Carlson v Carlson*, 293 Mich App 203, 205; 809 NW2d 612 (2011) (citations omitted).

In *Carlson*, 293 Mich App at 205-207, this Court observed:

> According to the 2004 Michigan Child Support Formula Manual, the first step in determining a child-support award is to ascertain each parent's net income by considering all sources of income. This calculation not only includes a party's actual income, but it can include imputed income. In other words, a party can be treated as having income or resources that the individual does not actually have. A trial court has the discretion to impute income when a parent voluntarily reduces or eliminates income or when it finds that the parent has a voluntarily unexercised ability to earn. However, a court's decision to impute income must be supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income.
>
> The 2004 MCSF sets forth a number of equitable criteria that *must* be considered when determining whether to impute income:
>
> (1) Prior employment experience;
>
> (2) Educational level;
>
> (3) Physical and mental disabilities;
>
> (4) The presence of the parties' children in the individual's home and its impact on the earnings;
>
> (5) Availability of employment in the local geographical area;
>
> (6) The prevailing wage rates in the local geographical area;
>
> (7) Special skills and training; or
>
> (8) Whether there is any evidence that the individual in question is able to earn the imputed income.

The 2004 MCSF also contemplates the difficulties in ascertaining an individual's ability and likelihood of earning imputed income where the individual is a business owner:

> There are special difficulties in determining the income of certain individuals . . . [because] persons who have significant control over the form and manner of their own compensation may be able to arrange that compensation so as to be able to minimize the amount visible to friends of the court and others.

In these instances, the MCSF directs that the court give special attention to factors such as unusual forms of income (e.g., profit sharing); in-kind income; redirected income; deferred income; fringe benefits; and certain tax deductions. [Citations, footnote, and quotation marks omitted.]

The trial court found defendant's testimony that he only made $800 to $900 a month not credible given his work experience as a certified mechanic and the cash transactions that took place at his business. The trial court found that the median income for an entry-level automotive mechanic in Detroit was $35,835 based on documentation submitted by the parties as a joint exhibit. But because defendant was not certified, the trial court decided to impute income to defendant of only $27,397, representing the bottom 10 percentile of the salary range. Based on this income level, the court calculated defendant's child support payments at $604 a month.

Defendant contends that he cannot pass the testing required to become a certified mechanic because he cannot read or use computers and, therefore, the income imputed by the trial court represents 2.5 times defendant's actual income. The trial court, however, believed that defendant could find a way to obtain recertification. The trial court's finding that defendant had an unexercised ability to earn is not clearly erroneous given that he was able to obtain certification in the past, and had supported himself, plaintiff, and the children with his automotive repair business. Defendant also claimed that he could not read well, but plaintiff testified that defendant could read and write. The document submitted by the parties established defendant's likelihood to earn the income imputed by the trial court, as it described the median salary in the area. Moreover, the trial court expressly recognized that defendant was not presently certified and imputed only an income at the bottom of the specified range. The trial court also took into account an unusual form of income that was unique to defendant's business—cash transactions.

We note that, while the trial court stated that it was imputing income to defendant, it also suggested that defendant actually earned more than $800 or $900 a month, and that his testimony that he made only $800 or $900 a month was not credible given his experience and the cash transactions at his business. Thus, while the trial court seemed to find that defendant's income was in fact higher than what he stated, it did not impute income to defendant at this higher level. The trial court's decision to impute income at the bottom of the range for certified mechanics was not an abuse of discretion.

### III. ATTORNEY FEES

Defendants also argue that the trial court erred by ordering defendant to pay plaintiff's attorney fees in the amount of $8,718 from his portion of the proceeds of the sale of the Boldt property. We agree. "This Court reviews a trial court's decision to award attorney fees in a divorce action for an abuse of discretion." *Woodington*, 288 Mich App at 369.

Plaintiff sought attorney fees under MCR 3.206(C)(2). She suggested that defendant had the ability to pay given that the trial court did not believe his testimony that his income was only $800 or $900 a month. She further argued that attorney fees were warranted based on defendant's obstructionist behavior. She requested $8,718 for her attorney's work on the case.

MCR 3.306(C) provides:

(1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that

(a) the party is unable to bear the expense of the action, and that the other party is able to pay, or

(b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

The trial court ordered defendant to pay the amount requested by plaintiff based on his unreasonable and obstructive conduct. Thus, the trial court apparently awarded fees under MCR 3.206(C)(2)(b), which as plaintiff argues, does not consider the party's ability to pay. See *Richards v Richards*, 310 Mich App 683, 701-702; 874 NW2d 704 (2015). However, plaintiff did not allege or establish that defendant refused to comply with any court order, and thus, she failed to show facts sufficient to justify the award. See MCR 3.306(C)(2). Moreover, while the trial court found that defendant attempted to interfere with plaintiff's right to marital assets by concealing his ownership in assets, thereby causing plaintiff to incur unnecessary legal fees, the trial court did not find that plaintiff incurred attorney fees because defendant refused to comply with a previous court order. MCR 3.206(C)(2)(b). Thus, the trial court abused its discretion by awarding attorney fees under MCR 3.206(C)(2)(b). See *Woodington*, 288 Mich App at 3369.

Additionally, the trial court failed to conduct a hearing or make findings of fact regarding the reasonableness of the fees incurred. See *Reed v Reed*, 265 Mich App 131, 165; 693 NW2d 825 (2005). "When requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services." *Id*. at 166. Although plaintiff submitted an attorney fee statement, the trial court did not find that those fees were actually incurred and it found, without explanation, that those fees were reasonable and caused by defendant's conduct. Accordingly, we reverse the trial court's award of attorney fees to plaintiff.

IV. ENTRY OF JUDGMENT

Finally, defendants contend that the trial court erred by entering the judgment of divorce without giving defendants an opportunity to object, and by including in the judgment a provision that was not part of its opinion and order. We agree.

"This Court reviews de novo the proper interpretation and application of statutes and court rules." *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

MCR 2.602(B) provides:

An order or judgment shall be entered by one of the following methods:

(1) The court may sign the judgment or order at the time it grants the relief provided by the judgment or order.

(2) The court shall sign the judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision.

(3) Within 7 days after the granting of the judgment or order, or later if the court allows, a party may serve a copy of the proposed judgment or order on the other parties, with a notice to them that it will be submitted to the court for signing if no written objections to its accuracy or completeness are filed with the court clerk within 7 days after service of the notice. The party must file with the court clerk the original of the proposed judgment or order and proof of its service on the other parties.

(a) If no written objections are filed within 7 days, the clerk shall submit the judgment or order to the court, and the court shall then sign it if, in the court's determination, it comports with the court's decision. If the proposed judgment or order does not comport with the decision, the court shall direct the clerk to notify the parties to appear before the court on a specified date for settlement of the matter.

(b) Objections regarding the accuracy or completeness of the judgment or order must state with specificity the inaccuracy or omission.

(c) The party filing the objections must serve them on all parties as required by MCR 2.107, together with a notice of hearing and an alternative proposed judgment or order.

(4) A party may prepare a proposed judgment or order and notice it for settlement before the court.

As this Court explained in *In re Leete Estate*, 290 Mich App 647, 656-657; 803 NW2d 889 (2010):

Thus, under MCR 2.602(B), for an order to be valid, it must be entered in one of four ways: it may be signed at the time relief is granted; it may be signed when its "form" is approved by all the parties and if, in the court's determination, it comports with the court's decision; it may be entered pursuant to the "seven-day rule"; or, it may be prepared and noticed for settlement before the court.

We agree with defendants that the trial court failed to comply with any of the methods for entering a judgment identified in MCR 2.602(B). The judgment of divorce was not signed when the relief was granted, which was when the court's opinion and order was issued. Nor was it signed after its form was approved by the parties because defendants never approved its form. Finally, the judgment was not entered pursuant to the "seven-day rule," nor was it noticed for settlement before the court. Rather, plaintiff submitted the judgment on December 21, 2015, consistent with the trial court's order, and the trial court signed and entered the judgment on

December 22, 2015, without giving defendants any opportunity to object. Although plaintiff requested a hearing on February 2, 2016, no such hearing was held.

Furthermore, the error was not harmless and it resulted in a substantial injustice to defendant. See MCR 2.613(A). The judgment of divorce contained a mutual release provision that was not part of the trial court's opinion and order. This provision "release[d] each party from any claims, including tort claims that the other party may have against them[.]" Given the manner of entry, defendant had no opportunity to object to the inclusion of this provision. Furthermore, defendants contend that the inclusion of the provision prejudiced defendant because he had a pending tort claim against plaintiff, which would be barred by this provision. Accordingly, we vacate the judgment of divorce and remand for proper entry of the judgment in accordance with MCR 2.602(B).

We affirm in part, vacate the entry of the divorce judgment, reverse the order awarding attorney fees, and remand to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle